UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
WILLIAM DEVLIN COOMBS and
CHRISTINA MAY COOMBS,
    Debtor.                                   No. 7-10-11712 SA

SALOMON LUNA, JULIE M. LUNA,
RICKY D. SWIFT, MARY L. SWIFT,
THOMAS M. STARK and
JENNIFER M. STARK,
    Plaintiffs,
v.                                                       No. 10-1099 S

CHRISTINA MAY COOMBS,
    Defendant.

## MEMORANDUM OPINION
## IN SUPPORT OF JUDGMENT

On June 18, 2010, Plaintiffs Salomon and Julie Luna ("Lunas") and Ricky and Mary Swift ("Swifts")[1] filed this non-dischargeability action against Debtor/Defendant, asserting that Debtor had, among other things, fraudulently persuaded them to "invest" money with her (that is, loan her money as an investment vehicle), sign contracts with a business associate of Debtor for the alleged construction of two "spec" homes (one for the Lunas and one for the Swifts) and take out construction loans from Los Alamos National Bank ("Bank") to finance the construction of those homes.  Contrary to Debtor's representations, Debtor did

---

[1] Thomas and Jennifer Stark are also named plaintiffs but stopped participating in the adversary proceeding on or about December 6, 2011.  Minutes of status conference (doc 59) and Order Resulting from Status Conference and Notice of Hearing on the Merits [Liability] and Damages, entered December 8, 2011 ("Order/Notice").  Doc 61.  Therefore no judgment is awarded in their favor.  The Court did not require that the style of the case be amended.

not own the lots which she was purporting to sell to Plaintiffs, nor were the homes built and sold as promised.  Instead the loan proceeds were used for other purposes.[2]  And instead of the profits that were supposed to flow back from Debtor's sale of the homes, Plaintiffs incurred a variety of costs they had to pay, including paying property taxes, securing the property (when the builder abandoned the construction but before the sale of the partially constructed homes to another builder on a short-sale basis), and paying interest reserves on the loans.  In addition, as a result of the short sale for the unfinished construction, Plaintiffs not only incurred income tax liability but also are paying off the remaining liability to the Bank over a ten-year period at 4% interest.  Clearly what happened was that Debtor engaged in a speculative venture to develop portions of a subdivision, in effect relying heavily on Plaintiffs' funding and the leverage that Plaintiffs' funding enabled.  Were the real estate market not to have collapsed when it did, the venture might have worked.  Obviously it did not, and so Debtor's misrepresentations have come back to haunt her.

After the pleadings (complaint and answer) were filed, the parties engaged in discovery.  The conduct of the adversary proceeding required several hearings, all of which were attended

---

[2] The allegations of the complaint raise questions about the role of the employee of the Bank that permitted the borrowing and supervised the loans, but that issue is not before the Court.

Case 10-01099-s   Doc 69   Filed 05/04/12   Entered 05/04/12 10:44:58 Page 2 of 11

by Debtor in person.  The discovery process proceeded desultorily until the Court conducted a final status conference, which served as a final pretrial conference, on December 6, 2011.  Debtor failed to appear at that status conference, which had been noticed out on November 24, 2011.  Doc 58.  At the status conference the Court set a trial date of January 5, 2012.  Doc 61.  The notice/order arising out of the status conference, doc 61, contained the following language in decretal paragraph 3: "If Defendant fails to appear at the hearing, the Court may enter a judgment of liability and conduct a hearing on damages. If Defendant does appear at the hearing, the Court will likely use the hearing to schedule another trial date."

   The Order/Notice was served on Debtor by the Bankruptcy Noticing Center at the address that she was using throughout her bankruptcy case and this adversary proceeding – 8338 Comanche Road N.E., Ste. A, Albuquerque, New Mexico 87110-2357 – on December 10, 2011.  Doc 62.  Two days later (December 12, 2011), Debtor filed a change of address in the adversary proceeding, stating that her new address was 1005 Waterford Drive, Waxahachie, Texas 75167.  Doc 63.

   On January 5, 2012, Plaintiffs appeared for trial with their counsel; Debtor did not appear.  The Court took evidence and orally rendered a default judgment of liability against Debtor and in favor of Plaintiffs, and permitted Plaintiffs to submit a

summary in writing of the various damages they there were seeking. Minutes – doc 64. Plaintiffs did so by submitting an Exhibit C and an Exhibit D directly to the Court, which the Court has now filed in CM (doc 66 – attachments C and D). Thus, the adversary proceeding is now ripe for a ruling on the damages and for closing[3].

As Exhibits C and D illustrate, Plaintiffs claim a variety of damages. Had Defendant appeared to defend, the Court might well have awarded fewer damages on the basis of lack of either a causal connection with or justifiable reliance on the fraudulent misrepresentations. However, with Defendant having conceded those issues and the rest of the liability issues by not appearing, the Court awards damages as set out at the end of this memorandum opinion.

The first item of damages for each set of Plaintiffs is the loan each made to Debtor. That item clearly constitutes allowable damages.

The second category of items is comprised of the payments made to the Bank pursuant to the respective construction loans which each set of Plaintiffs executed, including the interest reserves on the construction loans, and the amounts still owed to

---

[3]The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I); and these are findings of fact and conclusions of law as may be required by Rule 7052 F.R.B.P.

the Bank.  It appears that Plaintiffs each became obligated on these respective loans because of Debtor's representations (including the false representations which were a major part of the representations), and would not have done so but for Debtor's representations.  Whether Plaintiffs' reliance on those representations was justifiable, <u>see</u> <u>Field v. Mans</u>, 516 U.S. 59 (1995), is no longer at issue.  Therefore this category of damages is also allowable.

Third are the expenses incurred in protecting the real property in which each set of plaintiffs invested: paying subcontractors, paying property taxes and securing the property. Having allowed the damages for the underlying loan obligation, the cost of protecting the collateral is also allowable.

The income tax consequences of the short sale are not allowable (although this is a closer question).  The Restatement (Second) of Torts, § 548A (1977) provides as follows:

> Legal Causation of Pecuniary Loss
> A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance.

And § 549 provides in relevant part as follows:

> Measure of Damages for Fraudulent Misrepresentation
> (1) The recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is a legal cause, including
>     (a) ...

>           (b) pecuniary loss suffered otherwise as a
>           consequence of the recipient's reliance upon
>           the misrepresentation.

Finally, the comment on clause 1(b) of § 549 recites in part:

> These "indirect" or "consequential" damages resulting
> from the misrepresentation are recoverable if the
> misrepresentation is a legal cause of them, as stated
> in § 548A. This means that they must be of a kind that
> might reasonably be expected to result from reliance
> upon the misrepresentation.

See also Sunnyland Farms, Inc. v. Central New Mexico Electric Cooperative, Inc., 149 N.M. 746, 752-761, 255 P.3d 324, 330-39 (Ct. App.), cert. granted 150 N.M. 667, 265 P.3d 718 (2011) (stricter limits on damages arising from the foreseeability doctrine in contract context, citing, inter alia, Hadley v. Baxendale,156 Eng. Rep. 145 (1854)).

In this instance, the Court finds that the income tax consequences of the short sale are consequential damages that would not have been incurred but for the investment arising out of the misrepresentations. However, the Court also finds that these losses would not have been reasonably contemplated as potential damages at the time the misrepresentations and the investments were made. That there might be losses if the project failed? - clearly foreseeable (at least in theory). That there would be income tax obligations arising out of a short sale after the contractor abandoned the project following a real estate market crash? - not so much. Therefore the losses arising from the income tax consequences are not allowed.

Page 6 of 11

Case 10-01099-s    Doc 69    Filed 05/04/12    Entered 05/04/12 10:44:58 Page 6 of 11

Court costs are routinely allowed; the Court takes the term "litigation expenses" to mean items that would be allowed as court costs.  They will be allowed.

The Court makes no award for attorney fees.  (This is not a close question.)  The "American rule" is that each party bears its own fees unless otherwise provided for by a contract, statute or rule of court.  "Thus, the 'American Rule' applies to those non-contract claims, and each party must bear its own attorneys fees and expenses."  <u>Fortier v. Dona Anna Plaza Partners</u>, 747 F.2d 1324, 1338 (10th Cir. 1984) (citations omitted).  <u>Glass v. Pfeffer</u>, 657 F.2d 252 (10th Cir. 1981), reversed on other grounds <u>Cox v. Flood</u>, 683 F.2d 330 (10th Cir. 1982), does not provide support for an award of attorney fees.  That case dealt with a civil rights action against police officers, which resulted in judgment for the officers and the assessment of attorney fees essentially as sanctions against counsel.  The Tenth Circuit did refer to the trial court's inherent authority to award attorney fees, <u>id.</u> at 257-58, citing <u>inter alia</u> <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 757-62 (1980), but that was in the context of punishing counsel for misbehavior in frivolously pursuing the litigation against one of the defendants.  In this adversary proceeding, of course, there has been no such misbehavior as part of the litigation, and <u>Glass v. Pfeffer</u> provides no support for

awarding attorney fees for the fraudulent behavior asserted as part of the cause of action.

The federal judgment interest rate, 28 U.S.C. § 1961, effective for the week ending April 27, 2012 was 0.18% per annum. See <http://www.federalreserve.gov/releases/h15/current/> (last visited May 3, 2012).

Damages should therefore be awarded as follows:

To Salomon and Julie Luna,

| ITEM | | AMOUNT |
|---|---|---|
| **To Debtor:** | | |
| Loan | $ 47,000.00 | |
| Accrued interest | $ 41,684.99 | |
| Total Debtor | | $ 88,684.99 |
| Payments to Bank: | | |
| On loan | $ 1,670.97 | |
| Interest reserves | $ 6,280.55 | |
| Present value of future payments to be made[4] | $ 27,094.19 | |
| Total Bank | | $ 35,045.71 |
| To Others: | | |
| Real estate taxes | $ 1,304.38 | |
| Securing property | $ 168.91 | |
| Court costs and litigation expenses | $ 13,199.10 | |
| Total Others | | $ 14,672.39 |
| Total Judgment | | $ 138,403.09 |

---

[4] Principal balance due to bank, $22,503.85 at 4% interest per year (0.3333% per month) results in monthly amount due of $227.84 for ten years. See http://www.investopedia.com (follow "Free Tools" hyperlink; then follow "Calculators" hyperlink; then follow "Monthly Mortgage Payments" hyperlink)(last visited May 3, 2012). The present value of an annuity of $227.84 for 120 months at the federal judgment rate of 0.18% per year (0.015% per month) is $27,094.19. See http://www.investopedia.com (follow "Free Tools" hyperlink; then follow "Calculators" hyperlink; then follow "Present Value of an Annuity" hyperlink)(last visited May 3, 2012).

To Ricky and Mary Swift,

| **ITEM** | | **AMOUNT** |
|---|---|---|
| To Debtor: | | |
| Loan | $ 40,000.00 | |
| Accrued interest | $ 12,800.00 | |
| Total Debtor | | $ 52,800.00 |
| Payments to Bank: | | |
| On loan | $ 0.00 | |
| Interest reserves | $ 12,138.92 | |
| Present value of future payments to be made[5] | $ 22,181.70 | |
| Total Bank | | $ 34,320.62 |
| To Others: | | |
| Subcontractors | $ 9,159.02 | |
| Real estate taxes | $ 2,604.00 | |
| Securing property | $ 8,300.00 | |
| Court costs and litigation expenses | $ 13,199.10 | |
| Total Others | | $ 33,262.12 |
| Total Judgment | | $ 120,382.74 |

---

[5]Principal balance due to bank, $18,424.00 at 4% interest per year (0.3333% per month) results in monthly amount due of $186.53 for ten years. See http://www.investopedia.com (follow "Free Tools" hyperlink; then follow "Calculators" hyperlink; then follow "Monthly Mortgage Payments" hyperlink). The present value of an annuity of $186.53 for 120 months at the federal judgment rate of 0.18% per year (0.015% per month)is $22,181.70. See http://www.investopedia.com (follow "Free Tools" hyperlink; then follow "Calculators" hyperlink; then follow "Present Value of an Annuity" hyperlink).

**CONCLUSION**

The Court will enter a judgment 1) declaring a debt to Salomon and Julie Luna nondischargeable in the amount of $138,403.09, with interest to accrue at the federal judgment rate of 0.18% per annum on the amount of $96,718.10 until paid[6]; and 2) declaring a debt to Ricky and Mary Swift nondischargeable in the amount of $120,382.74, with interest to accrue at the federal judgment rate of 0.18% per annum on the amount of $107,582.74 until paid[7].

_Honorable James S. Starzynski_
United States Bankruptcy Judge

Date Entered on Docket: May 4, 2012

Copies to:

B. Kay Shafer
Law Office of B. Kay Shafer
3240-D Juan Tabo NE
Albuquerque, NM 87111

Christina May Coombs
1005 Waterford Drive
Waxahachie, TX 75167

---

[6] No interest shall accrue on the $41,684.99 of the judgment that represents accrued unpaid interest.

[7] No interest shall accrue on the $12,800.00 of the judgment that represents accrued unpaid interest.

Case 10-01099-s    Doc 69    Filed 05/04/12    Entered 05/04/12 10:44:58 Page 11 of 11